# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** ("*Agreement*") is made and entered as of the ___ day of Dec. 31, 2010, by and between Freedom Tax, LLC, a New Mexico limited liability company ("*Buyer*") and Southwest Tax Stores, LLC, a Delaware limited liability company ("*Seller*").

**WHEREAS**, upon the terms and subject to the conditions set forth in this Agreement, Buyer desires to purchase from Seller and Seller desires to sell to Buyer, specified assets of the Seller used the operation of certain tax preparation stores (the "*Stores*") located in the greater Albuquerque Metropolitan Area, as more specifically listed and described in **Exhibit A** attached hereto and incorporated herein.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained in this Agreement, the parties agree as follows:

## ARTICLE 1
## PURCHASE AND SALE

1.1 **Sale and Transfer of Assets**. Buyer agrees to purchase and the Seller agrees to sell all the assets owned by the Seller which are used or useful in the business operations of the Stores (the "*Business*"), as more specifically listed and described in **Exhibit A** attached hereto and incorporated by reference (the "*Purchased Assets*").

1.2 **Excluded Assets**. Notwithstanding any of the foregoing, the Purchased Assets do not include the following "*Excluded Property*" including cash, bank accounts and cash equivalents owned by Seller with respect to the Business; and (b) certain other items of personal effects, a list of which is attached hereto as **Exhibit B**.

1.3 **No Assumed Liabilities**. Except as expressly set forth in this Agreement, Buyer shall not and does not assume any liability or obligation of Seller, fixed or contingent, disclosed or undisclosed, including without limitation, lease or contractual obligations, employment contracts or commitments, obligations to employ any employee of Seller or for pensions, severance or other employee benefit plans, programs or practices, tax liabilities (including, without limitation, income, gross receipts, ad valorem, excise, value-added, sales, use, transfer, franchise, license, stamp, occupation, withholding, employment, payroll, property, or environmental tax or premium, together with any interest, penalty, addition to tax or additional amount imposed by any governmental body or authority; collectively, "*Taxes*"), unfulfilled barter liabilities or trade agreements, and any other claims against Seller of any kind or nature whatsoever, no matter when raised. Buyer shall not be required to defend any suit or claim arising out of any act, event or transaction occurring prior to the Closing Date or out of any condition existing prior to the Closing Date, in connection with the ownership or operation of the Business, including without limitation, any successor or transferee liability, not expressly assumed by Buyer hereunder.

1.4 **Purchase Price**. Buyer will pay Seller the aggregate sum of $520,000 (the "*Purchase Price*") for the Purchased Assets (which shall be free of liens and encumbrances). The Purchase Price shall be payable by Buyer to Seller, or designee by delivery of two promissory notes (the "*Notes*") in the aggregate amount of $520,000, which shall be payable as follows: (a) Payment of $50,000 line of credit by March 15, 2011, (b) payment to Troy Clark in the amount of $80,000 by March 31, 2011, (c) the initial promissory note ("*Note I*") shall be in the principal amount of $390,000 and shall be amortized over a five year period according to the amortization and repayment schedule, shall accrue interest at a rate of 9%, beginning on January 1, 2011. The Notes shall be secured by a personal guaranty of Kim R. Gutierrez and by a first lien security interest in all assets of Buyer. Until the Promissory Note shall have been paid in full, Buyer grants Seller the authority to be an authorized signatory on any and all bank





accounts maintained or obtained by Buyer or any of its affiliates or successors until Purchase Price is paid in full.

Earn-Out Agreement: The Purchase Price will be subject to the following reductions:

- If Revenues for the period beginning January 1, 2011 and ending December 31, 2011 are $434,000.00 or more, than no reduction in the Purchase Price
- If Revenues for the period beginning January 1, 2011 and ending December 31, 2011 are between $350,000.00 and $433,999.99, than the Purchase Price will be reduced by $150,000.00.
- If Revenues for the period beginning January 1, 2011 and ending December 31, 2011 are between $150,000.00 and $349,999.99, than the Purchase Price will be reduced by $300,000.00.
- If Revenues for the period beginning January 1, 2011 and ending December 31, 2011 are less than $150,000.00, than the Purchase Price will be reduced by $390,000.00, and Seller will make the payments of $50,000 to the line of credit by March 15, 2011 and the $80,000 to Troy Clark by March 31, 2011 and any Promissory Notes signed will be considered fulfilled and returned to Buyer with no recourse from Seller.

Any and all reductions in the Purchase Price will be reflected in a cancellation of the existing Promissory Note upon the Buyer entering into a new revised Promissory Note with the appropriate reduction in the outstanding balance owed as of December 31, 2011.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES OF SELLER

The Seller represents and warrants to Buyer that:

2.1 **Power and Authority**. Seller has the right, power and authority to consummate Seller's obligations under this Agreement, and all approvals and consents necessary in connection with Seller's performance hereunder have been obtained, including, but not limited to, spousal consent.

2.2 **Marketable Title**. That Seller has good and marketable title to the Purchased Assets, free and clear of any and all liens, liabilities or other encumbrance.

2.3 **Agreement Does Not Violate Other Instruments**. The execution and delivery of this Agreement by the Seller does not, and the consummation of the transactions contemplated herein will not, violate any provision of or constitute an occurrence of default under any provision of or conflict with or give rise to a right by any party to terminate its obligations under, any mortgage, deed of trust, conveyance to secure debt, note, loan, lien, lease, agreement, instrument or any order, judgment, decree or other arrangement to which the Seller is a party or is bound or by which the Seller's assets would be affected.

2.4 **Condition of Assets**. All of the tangible properties and assets to be sold or the use thereof to be transferred to the Buyer hereunder are now and on the Closing Date will be in an "AS IS" condition.

2.5 **Compliance with Laws**. Seller has complied with all applicable federal, state and local laws, rules and regulations affecting the Business and operations of the Business and the Purchased Assets.

2.6 **Pending Litigation.** Seller is not a party to, nor threatened with any suit, action, arbitration, administrative or other proceeding. There is no judgment or order of any court or administrative agency outstanding against the Seller, or otherwise affecting the Business or the Purchased Assets.

2.7 **Contracts, Leases and Other Commitments.** Except as otherwise disclosed to Buyer, the Seller is not a party to any written, oral or implied contract, agreement, lease of real or personal property, or other commitment, including but not limited to any contract or agreement for the purchase or sale of merchandise or for the rendition of services. The Seller has performed all obligations required to be performed by it as of the date of this Agreement under all of its contracts, leases and commitments and is not in default or arrears under any of the terms thereof and no condition exists or has occurred which, with the giving of notice or the lapse of time, or both, would constitute a default in, accelerate maturity of, or otherwise modify any obligation of the Seller.

2.8 **Taxes.** All taxes and returns due to the city, state and federal governments (including income, Social Security, withholding, sales and unemployment insurance) which may impact or affect the Business or the Purchased Assets have been paid through the December 31, 2010, will be paid by Seller through the Closing Date.

2.9 **Working Order.** On the Closing Date, all equipment which is part of the Purchased Assets shall be in an "AS IS" condition.

2.10 **Corporate Status.** Seller is a Delaware limited liability company in good standing. This Agreement and the consummation of the transactions contemplated herein have been or will be approved by the Board of Directors and Shareholders of Seller.

2.11 **No Brokers.** Seller has no liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which the Buyer could become liable or obligated.

2.12 **Non-Contravention.** Neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will (i) violate any constitution, statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restriction of any government, governmental agency, or court to which Seller is subject or any provision of the charter or bylaws of Seller or (ii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any agreement, contract, lease, license, instrument, or other arrangement to which Seller is a party or by which it is bound or to which any of the Assets are subject (or result in the imposition of any lien or encumbrance upon the Assets). Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of any government or governmental agency in order for the parties to consummate the transactions contemplated by this Agreement.

2.13 **Full Disclosure.** There are not and will not be materially misleading misstatements in any of the representations and warranties made by Seller in this Agreement or in any of the agreements, exhibits, certificates and instruments delivered or to be delivered by Seller pursuant to this Agreement, and Seller has not omitted to state any fact necessary to make such representations and warranties not materially misleading.

2.15 **Survival.** The representations and warranties contained in this Article II and in any agreement, certificate, exhibit or document delivered by Seller in connection with this Agreement shall survive the Closing for a period of three (3) years from the date hereof.

**ARTICLE 3**

**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer represents and warrants to Seller that:

3.1 **Power and Authority**. Buyer has the right, power, legal capacity and authority to consummate Buyer's obligations under this Agreement, and all approvals and consents necessary in connection with Buyer's performance hereunder have been obtained. The execution, delivery and performance by Buyer of this Agreement and each and every agreement, document and instrument provided for herein have been duly authorized and approved by the Board of Directors of Buyer.

3.2 **Agreement Does Not Violate Other Instruments**. The execution and delivery of this Agreement by the Buyer does not, and the consummation of the transactions contemplated hereby will not, violate or constitute an occurrence of default under any provision of or conflict with, result in the acceleration of any obligation or give rise to any right by any party to terminate its obligations under any mortgage, deed of trust, conveyance to secure debt, note, loan, lien, lease, agreement, instrument or any order, judgment, decree or other arrangement to which Buyer is a party or is bound or by which Buyer's assets are or might be affected.

**ARTICLE 4**
**CLOSING**

4.1 **Time and Place of Closing**. The Closing Date shall be on the ___ day of _________, 2010, or on such other date to which the parties hereto mutually agree. Closing shall be held at the principal office of Seller or at such other place to which the parties hereto mutually agree. The Closing shall at all times be contingent on Buyer's ability to secure financing for the Purchase Price from Enterprise Bank or another banking institution reasonably acceptable to Buyer. Said financing shall be on terms reasonably acceptable to Buyer.

6.2 **Seller's Deliveries**. At the closing, Seller shall deliver or cause to be delivered to Buyer:

(a) An executed original of this Agreement;

(b) An executed Bill of Sale, substantially in the form of **Exhibit C** attached hereto and incorporated herein by reference;

(c) An executed Noncompete Agreement, substantially in the form of **Exhibit D** attached hereto and incorporated herein by reference;

(e) Such other agreements, documents, instruments or certificates which, in the reasonable opinion of Buyer or its counsel, are necessary for the Closing of the transactions contemplated by this Agreement and the transfer and assignment of the Purchased Assets hereunder.

6.3 **Buyer's Deliveries**. On the Closing Date, Buyer shall deliver or cause to be delivered to Seller:

(a) An executed original of this Agreement; and

(b) The executed promissory note, including any documents required under the promissory note, in the aggregate principal amount of $520,000 ($520,000.00).

6.4 **Post-Closing Matters**. Following the Closing Date. Seller will, on request of Buyer, execute and deliver to Buyer such further instruments in writing as may be reasonably required to complete or evidence the transactions herein provided for. and Buyer will, on request, execute and deliver like instruments to Seller. Following the closing. Seller shall take all such steps as may be requisite and necessary to put Buyer into actual possession of the assets acquired pursuant hereto.

6.5 **Books and Records**. On the Closing Date. Seller shall deliver to Buyer all books. records, files and correspondence related to the Stores which may be in Seller's possession. Seller further agrees all records and materials related to the business and operations of the Stores shall be the sole and absolute property of the Buyer. subject only to the rights of Liberty Tax in connection therewith, and Seller expressly disclaims any rights to any such books and records. For a reasonable period after the Closing Date, Buyer shall provide access to Seller to the books and records as may be required in connection with the preparation of Seller's tax returns for tax periods prior to the Closing Date.

6.6 **Indemnification**.

(a) On and after the Closing Date. Seller shall and hereby does indemnify and hold harmless Buyer from and against any and all losses, demands, liabilities, damages, costs, charges, fines, legal fees, judgments, expenses or any other costs and expenses (the "***Indemnifying Losses***") sustained by Buyer: (i) arising from any misrepresentation by Seller in or pursuant to this Agreement or in any other agreement, certificate or document delivered to Buyer on or before the Closing Date; or (ii) resulting from the breach of any representation or warranty by Seller in this Agreement or in any other agreement, certificate or document delivered to Buyer on or before the Closing Date; (iii) resulting from a breach or default in the performance of any of the covenants which Seller is required to perform under this Agreement; and/or (iv) arising in connection with Seller's negligent or willful acts or omissions occurring prior to the Closing Date.

(b) On and after the Closing Date, Buyer shall and hereby does indemnify and hold harmless Seller from and against any and all Indemnifying Losses sustained by Seller arising in connection with Buyer's negligent or willful acts or omissions occurring after the Closing Date.

6.6 **Confidentiality:**

The terms and conditions of this Agreement and all other documents associated with this Transaction, including the identity of Freedom Tax are confidential and are not to be disclosed to anyone outside Freedom Tax and the Company. Neither Freedom Tax nor the Company shall make any news releases or any public disclosure with respect to the Transaction contemplated hereby without the prior consent of the other party.

## ARTICLE 7
## MISCELLANEOUS

7.1 **Bulk Transfer Waiver**. Buyer hereby waives any duty on the part of Seller to comply with any bulk transfer laws in connection with the completion of the transactions contemplated by this Agreement, and Seller hereby indemnifies Buyer against any and all loss, cost or expense arising out of the failure to comply with any such bulk transfer laws.

7.2 **Brokers**. Buyer agrees to indemnify and hold harmless Seller against any fee, loss or expense arising out of any claim by any broker or any finder employed or alleged to have been employed

by Buyer. Seller agrees to indemnify and hold harmless Buyer against any fee, loss or expense arising out of any claim by any broker or finder employed or alleged to have been employed by Seller.

7.3 **Expenses**. All expenses incurred by the parties hereto in connection with or related to the authorization, preparation and execution of this Agreement and the closing of the transactions contemplated hereby, including, without limitation on the generality of the foregoing, all fees and expenses of agents, representatives, counsel and accountants employed by any such party, shall be borne solely and entirely by the party which has incurred the same.

7.4 **Headings**. The section and other headings in this Agreement are inserted solely as a matter of convenience and for reference and are not a part of this Agreement.

7.5 **Entire Agreement** This Agreement constitutes the entire agreement among the parties hereto and supersedes and cancels any prior agreements, representations, warranties or communications, and any other matters, oral or written, among the parties hereto relating to the transactions contemplated hereby or the subject matter hereof. Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by an agreement in writing signed by the party against whom or which the enforcement of such change, waiver, discharge or termination is sought.

7.6 **Counterparts** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all together shall constitute one and the same instrument.

7.7 **Pronouns**. All pronouns used herein shall be deemed to refer to the masculine, feminine or neuter gender as the context requires.

7.8 **Exhibits Incorporated**. All exhibits attached hereto are incorporated herein by reference and all blanks in any such exhibits, if any, will be filled in as required in order to consummate the transactions contemplated herein in accordance with this Agreement.

7.9 **Assignment** This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

7.10 **Severability** In the event any provision of this Agreement should be construed by any duly authorized person, agency or entity to violate any federal, state or local laws or the regulations now or hereafter promulgated thereunder, the parties do hereby agree, and are authorized, to amend this Agreement in any manner necessary to comply with any such laws, which amendments may, if necessary to carry out this purpose, be retroactive to any date necessary. Furthermore, the provisions of this Agreement are separable. If any one or more provisions of this Agreement are held invalid by a court of competent jurisdiction or are voided or nullified for any reason, the remaining provisions and paragraphs shall continue in full force and effect and shall be binding on the parties so as to carry out the intents and purposes of the parties as nearly as possible.

7.12 **Notices**. All notices required or permitted to be given under this Agreement shall be deemed to have been given as follows: if delivered personally, the date on which a notice is deemed delivered shall be the date on which such delivery is made and, if delivered by mail, the date which is three days after the date on which such notice is deposited in the U.S. Mail, properly addressed and with postage prepaid, shall be deemed the date of delivery. Any party may change its address for the purposes of this paragraph by giving the other party written notice of the new address in the manner set forth above.

7.13 **Governing Law**. This Agreement shall be construed in accordance with and governed by the laws of the State of New Mexico.

[END OF PAGE]

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** Buyer has caused this Agreement to be executed on its behalf by its duly authorized officers and Seller has executed this Agreement as of the day and year first above written.

**SELLER:**

Southwest Tax Stores, LLC
a Delaware limited liability company

By:______________________________
Troy S. Clark, Managing Member

**BUYER:**

Freedom Tax, LLC
a New Mexico limited liability company

By:______________________________
Kim R. Gutiérrez, Sole Member

**EXHIBIT A**
**LIST OF PURCHASED ASSETS**

Assets/Liabilities Include:

1. Rights to the assignment or sublease of all currently leased spaces (subject to Landlord's consent):

   - **Eubank Store:**
     1449 A Eubank Blvd. NE
   - **San Mateo Store:**
     3118 San Mateo Blvd NE
   - **Coors Blvd Store:**
     Coors Blvd
   - **Los Lunas Store:**
     Main Street
   - **Rio Rancho Store:**
     Golf Course Road

2. Employee Lists
3. All Furniture, Fixtures, and Computers
4. Leasehold Improvements
5. All supplies which do not contain the Liberty Tax Service Logo

**EXHIBIT B**
**SCHEDULE OF EXCLUDED ASSETS**

Assets Excluded:

- Franchise Agreements with JTH Tax, Inc.
- All existing signs, displays, or materials which contain the Liberty Tax Service logo
- Existing Bank Accounts of Seller
- EFIN numbers assigned by the Internal Revenue Service
- Existing Customer Lists in any and all forms

**EXHIBIT C**
**FORM BILL OF SALE AND ASSIGNMENT**

**KNOW ALL MEN BY THESE PRESENTS**, that Southwest Tax Stores, LLC, a Delaware limited liability company ("*Seller*"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00), and other good and valuable consideration as set forth in the Asset Purchase Agreement between Buyer and Seller, in hand paid by Freedom Tax, LLC, a New Mexico limited liability company ("*Buyer*"), the receipt and sufficiency of which is hereby acknowledged by these presents, does hereby (i) bargain, sell, transfer, assign and convey unto Buyer all of Seller's interest in any and all "*Purchased Assets*," as such term is defined in that certain Asset Purchase Agreement dated as of the 3? day of Dec, 2010, between Seller and Buyer (the "*Asset Purchase Agreement*"), and as more specifically listed and described in **Exhibit A** to the Asset Purchase Agreement, which is incorporated herein by reference. Buyer shall have any and all rights of Seller in and to any and all of the above property and contracts, which now exists or may hereafter arise. This Bill of Sale and Conveyance is subject in all respects to the terms, covenants and conditions set forth in the Asset Purchase Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Bill of Sale and Assignment on this 3 day of Dec, 2010.

**SELLER:**

Freedom Tax, LLC,
a Delaware limited liability company

By: [signature]
Troy S. Clark, Managing Member

**BUYER:**

Freedom Tax LLC
a New Mexico limited liability company

By: [signature]
Kim R. Gutierrez, Sole Member

**EXHIBIT D**
**FORM NON-COMPETITION AGREEMENT**

**THIS NON-COMPETITION AGREEMENT** is made and entered this 3rd day of Dec, 2010, by and between Freedom Tax, LLC, a Delaware limited liability company ("*Company*") and Troy S. Clark, an individual ("*Prior Owner*").

**WHEREAS**, Southwest Tax Stores, LLC, a Delaware limited liability company ("*Seller*") and Company entered into that certain Asset Purchase Agreement of even date herewith (the "*Asset Purchase Agreement*"), pursuant to which Company purchased all assets related to the business of Seller.

**WHEREAS**, Prior Owner is the sole member of Seller, and, as a condition and inducement for Company to consummate the transactions contemplated by the Asset Purchase Agreement, Prior Owner is required to enter into this Agreement.

**NOW, THEREFORE**, in consideration of the mutual premises and covenants herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Not To Carry On Similar Business**.

(a) During the Employment Period and for a period of one (1) year after the date hereof, the Prior Owner will not directly or indirectly, in the territory comprised of the Greater Albuquerque Metropolitan Area:

(i) as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, or in any other capacity whatsoever (other than as the holder of not more than one percent (1%) of the total outstanding stock of, a publicly held company), engage in the tax preparation business; or

(ii) recruit, solicit or induce, or attempt to induce employee or employees of Company to terminate their employment with, or otherwise cease their relationship with, Company; or

(iii) solicit, divert or take away, or attempt to divert or to take away, the business or patronage of any of the clients, customers or accounts, or prospective clients, customers or accounts, of Company which were contacted, solicited or served by the Prior Owner while employed by Company.

(b) If any restriction set forth in this Section 1 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

2. **Confidential Information**.

(a) **Definition**. As used in this Agreement, the term "*Confidential Information*" shall include, by way of illustration, but not limitation, financial data, research data, personnel data, customer and potential customer lists, computer software, computer programs and all other types of computer technology, manufacturing processes, methods and formulas, marketing data, sales techniques, and advertising, traveling and canvassing methods, brochures or instructions relating to the products, services or business of Company or Seller (including Confidential Information related to the assets

purchased by the Company) or any customer or potential customer of Company. A "*potential customer*" means a customer which the Prior Owner or Company actively solicits through personal contact or direct correspondence prior to or during Prior Owner's association and employment with Company or Seller.

(b) **Protection of Confidential Information**.

(i) By executing this Agreement. Prior Owner acknowledges that he has been advised that Company wishes to preserve the Confidential Information as a secret. Prior Owner further acknowledges that the Confidential Information shall be the exclusive property of Company and Company may, from time to time, identify other Confidential Information that it wishes to preserve as a secret. which Confidential Information may, but need not be, recorded as an Exhibit to this Agreement.

(ii) Unless Prior Owner shall first secure the express written consent of Company, Prior Owner shall not disclose, communicate or divulge to, or use for his own benefit or for the benefit of any other person, proprietorship, partnership, venture, association, firm, corporation or other entity, either during or subsequent to the term of employment of Prior Owner by Company, any Confidential Information, whether or not patentable, of which Prior Owner becomes informed during his association or employment with Company, whether or not developed by Prior Owner or Company. This obligation shall not apply to any Confidential Information which is or shall become a part of the public domain through no fault or negligence of Prior Owner.

(iii) Upon termination of Prior Owner's association or employment with Company, Prior Owner shall promptly deliver to Company all manuals, letters, notes, notebooks, reports, programs, customer and potential customer lists, and all copies thereof, and all other materials of a secret and confidential nature related to the business of Company or any customer or potential customer of Company, which are in the possession or under the control of Prior Owner.

3. **Records Belong To Company**. All books, records, files, forms, reports, accounts, papers and documents and other information (including, without limitation, the Confidential Information and the Developments, if any) relating in any manner to Company's business, vendors, suppliers, list brokers or customers, whether prepared by Prior Owner or anyone else, are the exclusive property of Company, shall not be used, directly or indirectly, for Prior Owner's personal pecuniary gain and shall be returned immediately to Company upon termination of employment or upon Company's request at any time.

4. **Breach**.

(a) The parties hereby agree that each of the foregoing matters is important, material and confidential, and gravely affect the effective and successful conduct of the business of Company. Further, the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of Company and are considered by the Prior Owner to be reasonable for such purpose. Provided, however, in the event that Company shall default in its obligations to Seller under the Asset Purchase Agreement or any agreement, document or instrument executed in connection therewith, then this Agreement shall be immediately null and void without further action by Prior Owner.

(b) Prior Owner agrees that any breach of the terms and conditions of this Agreement is a material breach of this Agreement, from which Prior Owner may be enjoined and for which the Prior Owner shall also pay to Company all damages (including but not limited to compensatory, incidental, consequential and lost profits damages), which arise from the breach, together with interest, costs (including expert witness' fees) and Company's reasonable attorneys fees (through appeal) to enforce this Agreement.

5. **Governing Laws**. This Agreement shall be governed by the laws of the State of New Mexico without regard to conflict of laws principles. Any lawsuit for breach shall be brought only in Bernalillo County, New Mexico, which shall be a proper venue.

6. **No Waiver**. Company may waive a provision of this Agreement only in a writing signed by the President of Company. The waiver by Company of a breach by Prior Owner of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the Prior Owner.

7. **Assignment**. The rights of Company under this Agreement may be assigned. Prior Owner shall not assign his or her rights nor delegate his or her obligations under this Agreement.

8. **Headings**. The paragraph headings of this Agreement are not a substantive part of this Agreement and shall not limit or restrict this Agreement in any way.

9. **Not Contract For Employment**. This Agreement is not an employment contract and does not give Prior Owner any employment rights.

10. **Complete Understanding**. This Agreement sets forth the entire agreement between the parties. This Agreement may not be changed, altered or amended, except by a writing signed by both parties.

11. **Severability**. If any part of this Agreement is void, voidable, invalid, or unenforceable, for any reason, the Agreement shall then be considered divisible as to such part with the remainder of the Agreement remaining as valid and binding as though such part were not included in the Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of this 31 day of Dec, 2010

FREEDOM TAX, LLC,
a New Mexico limited liability company

Kim R. Gutierrez, Sole Member

PRIOR OWNER:

Troy S. Clark, Individually